## DANA NEWTON *versus* PETER NEWTON.

Where the defendant conveyed to the plaintiff a room adjoining a kitchen belonging to the defendant, and connected with it by a door, with the privilege of baking in an oven in the kitchen, and there was no other passage way from such room to the kitchen within the house, except through a room belonging to a third person, it was *held*, that the plaintiff had a right by implication to pass through such door into the kitchen for the purpose of baking, and that it was not necessary for him to show any previous use of such door, although it appeared that for three or four years he had passed into the kitchen through the room of such third person.

A cellar under the front entry of a house belonging to the heirs of a deceased person, was assigned to the widow as part of her dower, with a right to pass down the kitchen cellar stairs, until the heirs of the deceased should construct cellar stairs under the front entry, when her right to pass down the kitchen cellar stairs was to cease. Subsequently by a quitclaim deed executed by the defendant as one of the heirs, a cellar adjoining the widow's cellar was conveyed to the plaintiff, with a right to pass down the kitchen cellar stairs until the new stairs should be built, when the plaintiff was " to have no privilege to pass the kitchen stairs, but to have privilege to use the front stairs into the cellar." The front cellar stairs were subsequently built, leading into the cellar of the widow, through which the plaintiff might pass into his own cellar. It was *held*, that the plaintiff had a right in common with the widow, to pass down the front cellar stairs into his own cellar ; and that the defendant was not authorized, whether acting in his own right or in that of the widow, to close up such passage.

A tenant in common of a well has a right to send his servant down into it for the purpose of cleaning it out, if he has reason to suppose that the bottom is filthy ; and if obstructed in so doing, by his co-tenant, he may maintain an action against him, although, in point of fact, the well did not require to be cleansed.

ACTION of the case. The declaration contained four counts.

The first count was for closing up a door, on March 5, 1833, leading from the southeast room of a dwellinghouse, in Southborough, occupied by the plaintiff and the defendant, whereby the plaintiff was prevented from passing through such door to an oven in the kitchen, on certain days, for the purpose of baking.

No question arose upon the second count.

The third count was for shutting up, on February 19th, 1834, a passage way from the front entry of such house to the plaintiff's cellar, which was under the southeast room.

Newton
v.
Newton.

The fourth count was for obstructing the plaintiff, on August 12, 1834, in cleaning out a well situated on the premises.

The trial was in the Court of Common Pleas, before *Strong* J.

The dwellinghouse originally belonged to Reuben Newton, the father of the contending parties. Upon his decease, several rooms, including the southwest room, and the cellar under the front entry and southwest room, were assigned to his widow, for her dower. The assignment, which was dated November 29, 1827, further provided, that the widow should have a right to pass through the " kitchen and down the cellar stairs, and into her cellar, until the heirs of said deceased shall cause a good and convenient set of stairs to be erected under the front stairs in the front entry, then said widow shall have no right to pass down the kitchen cellar stairs "; and that the widow should also have the right of passing " out at the west door, the front entry and the front stairs up to the chambers, to be improved in common by the widow and heirs." The assignment was accepted by the widow in March 1828. Afterwards by virtue of various deeds made in 1828 among the heirs of the deceased, the kitchen became the property of the defendant, with " equal rights to the well for water." By a quitclaim deed, dated April 15, 1828, executed by the defendant and another heir, the southeast room and the cellar under the same, were conveyed to the plaintiff, " with a privilege in the kitchen to bake in the oven one day in a week, Wednesday to be considered the day, unless it is improved by the widow, and if it is improved, the next day following; also a privilege in the kitchen, to pass and repass to the kitchen stairs into the cellar, till such time as the one in possession of the kitchen builds cellar stairs under the front chamber stairs in front entry, then to have no privilege to pass the kitchen stairs, but to have privilege to use the front stairs into the cellar and chambers," and an " equal privilege to the well for water."

There was evidence tending to show, that, on March 5, 1833, the plaintiff having made preparations for baking in the oven, undertook to pass through the door, which opened from

the southeast room into the kitchen, but that the same was closed by the defendant ; and that the plaintiff was thereby prevented from passing that way into the kitchen. It also appeared, that the only other ways of passing from the southeast room to the kitchen, were through the southwest room, which was set off to the widow, or through the front door and around the house to an outside door that opened into an entry connected with the kitchen.

*Newton*
*v.*
*Newton.*

From 1828 till about a year before March 5, 1833, the plaintiff lived with his mother and sister, in the west part of the house, which had been set off to his mother ; and when they had occasion to use the oven, they passed into the kitchen from the door of the southwest room. It did not appear, that the plaintiff had ever passed through the southeast room door to the oven for the purpose of baking, on the days when he had a right to go to the oven ; but a witness testified, that previously to that time, and while the plaintiff occupied the southeast room, they had at several times, on the days when they had a right to bake, tried to open the door in question, but had found it fastened.

The defendant contended, that before the plaintiff could maintain an action against him for closing such door, he must show, that he had used it as a way previously to March 5, 1833.

But the judge ruled, that, as there was no other passage way from the southeast room to the kitchen within the house, except that through the widow's room, the plaintiff had a right to use this way, without showing any previous use of it ; and that therefore if the jury found, that the defendant closed it on that occasion, it being one of the days on which the plaintiff might use the oven, the plaintiff was entitled to recover.

It further appeared, that the front cellar stairs which had been subsequently erected, led into the widow's cellar ; that the plaintiff had been in the habit for some time of passing down these and through a part of her cellar into his own, which was under the southeast room ; that on one occasion, the defendant obstructed and closed up this passage way ; and that this was the cause of action set forth in the third count.

The defendant produced a general power of attorney from

the widow, dated June 1, 1833, authorizing the defendant, among other things, to carry on and improve all her real estate, and contended, that, as her agent, he had a right to close up the passage way to the plaintiff's cellar ; and that the plaintiff, having failed to show a right of way by the front stairs, could not recover on this count.

But the judge ruled, that the widow's right to these stairs was only a right in common with the other tenants of the house, and held by her in the same manner as the right to use the kitchen cellar stairs ; that the plaintiff had a right of passage by the front cellar stairs to his cellar, and that he had none over the kitchen cellar stairs ; and the jury were instructed, that if they believed that the defendant obstructed this passage way into the plaintiff's cellar, they must find for the plaintiff.

It further appeared, that the well was upon a part of the premises set off to the widow and leased by her to the defendant, to be held in common ; that the defendant, as an occupant of the estate, had a right to use the well ; that the water having become offensive to the taste and smell, the plaintiff employed some men to clean it out ; that after they had pumped all the water out, and one of them was preparing to go down into the well, the defendant said and did certain things, in consequence of which the plaintiff desisted from doing any thing further towards cleaning it out ; that, on the next day, the defendant employed a man to go into the well, who found that there was no filth or matter in the well to be removed ; and that after this, the water was sweet and fit for use.

The defendant contended, that as the cause of action set forth in the fourth count was the obstructing the plaintiff in cleaning out the well, so as to make the water pure and fit to be used, he could not recover, because it had been found, that every thing which was needed to purify the water in the well, had been accomplished before the defendant interfered to stop the plaintiff's operations, it being only necessary to pump it out.

But the judge ruled, that it was not necessary for the plaintiff to prove that the well was filthy ; that if he had good ground, from the impurities of the water, to believe that it was

filthy, although in fact it was not so, he had a right to go down or send a person down for the purpose of cleaning it out ; and that if the defendant so interfered as to make it reasonable for a prudent man to desist from going into the well for this purpose, the plaintiff was entitled to recover.

The jury found a verdict for the plaintiff.

The defendant excepted to the rulings of the court.

*Washburn*, for the defendant, to the point, that as the way to the oven through the southeast room door had never been expressly granted or used, it should have been left to the jury to determine, whether the plaintiff had not elected another way to the oven, cited *Jones v. Percival* 5 Pick. 485 ; to the point, that a way through such door could not, under the circumstances, be claimed by the plaintiff as a way of necessity, even if the widow had excluded him from passing through the southwest room, *Gayetty v. Bethune*, 14 Mass. R. 55 ; 3 Dane's Abr. 257 ; to the point, that the quitclaim by the defendant to the plaintiff, of a right to pass down the cellar stairs under the front entry, did not estop the defendant, as such conveyance related only to his reversionary interest, and not to his interest as tenant in possession, with all the rights of the widow, *Comstock v. Smith*, 13 Pick. 116 ; and to the point, that as the parties were tenants in common of the well, and as at the time when the defendant obstructed the plaintiff in cleansing it, there was in fact no filth in it, and so the plaintiff suffered no damage by the act of the defendant, the plaintiff could not maintain this action, Com. Dig. *Action on the Case*, *B* 1.

*Newton* and *W. Lincoln*, for the plaintiff, to the point, that the defendant, by excluding the plaintiff from using the kitchen cellar stairs, impliedly gave him a right in common to use the front cellar stairs, cited *Story v. Odin*, 12 Mass. R. 157 ; *Thurston v. Hancock*, 12 Mass. R. 220 ; and to the point, that if the well was impure, either party had a right to examine it and to purify it, and that an interference with such right on the part of the defendant, entitled the plaintiff to nominal damages at least, *Van Wart v. Woolley*, 1 Moody & Malkin, 520.

PUTNAM J. afterward drew up the opinion of the Court. By the deed from the defendant and another, to the plaintiff,

dated April 15, 1828, the plaintiff became entitled to the south east room, with a right to bake in the oven in the kitchen belonging to the defendant. There was a door leading directly from the southeast room into the kitchen ; and it is too clear for argument, that by a proper construction of that deed, the plaintiff had a right to use that door to pass to the kitchen and to the oven on the proper days assigned. The defendant therefore unlawfully shut and fastened the door, and interrupted the plaintiff in his right to go through that door to the kitchen and to the oven. The direction of the Court of Common Pleas was right upon this matter ; which grows out of the first count.

The third count is for shutting up a passage way from the front entry to the plaintiff's cellar, which is under the southeast room, which the defendant and another conveyed to the plaintiff by the deed before mentioned, " with a privilege in the kitchen to pass and repass to the kitchen stairs into the cellar, till such time as the one in the possession of the kitchen builds cellar stairs under the front chamber stairs in the front entry, then to have no privilege to pass the kitchen stairs, but to have privilege to use the front stairs into the cellar and chambers."

The stairs under the front entry were built afterwards, and thereupon the plaintiff ceased to have any right to use the kitchen stairs ; but in virtue of the deed before mentioned, certainly as between the parties, he acquired a right immediately to use the new stairs under the front entry, to go to his cellar. This right was perfect as against the defendant, the grantor, who obstructed the plaintiff.

Upon a reasonable construction of the assignment of the dower, and of the deed before cited, we think the Court of Common Pleas were correct in their direction upon the right of the plaintiff to the use of the new stairs under the front entry instead of the kitchen stairs, which were to be used until the new stairs were built. In the assignment of dower, various easements are granted to the widow, in common with the heirs. She has a right to pass through the kitchen and down the cellar stairs into her cellar, until the heirs shall build convenient stairs under the front entry, under the front stairs.

These were clearly a substitute for the others, and there can be no question but that the others were to be used by the heirs in common with her. And when the defendant and another granted their right to the plaintiff, they must have so understood the conveyancing. They limit the right of the plaintiff to the use of the kitchen stairs, to the time when the new stairs should be built, and then he was to have the right of passage to his cellar over the new stairs. One was a substitute for the other. So if the defendant had authority from the widow and had given notice of it, and had claimed to act under her, yet by a just construction of the conveyancing, she herself had only a privilege to pass over the new stairs ; and the plaintiff, claiming under the defendant and other heirs, had the same privilege. It is only by implication that the widow has any right of passage over the new stairs that were to be built under the front entry. But when the heirs divide, and he defendant and another convey to the plaintiff, they say that when the new stairs shall be erected, the plaintiff shall have no right to continue to use the kitchen stairs, but is "*to have privilege to use the front stairs into the cellar.*" So expressing in terms in the deed to the plaintiff, what can only be got by reasonable implication in regard to the widow, respecting the right to pass over the new stairs. But that implication is necessarily to be drawn from the apparent intent of the assignment. The cellar under the front stairs was accepted by the widow as part of her dower, subject to the right of way which the heirs had to pass over the stairs, which led into it from the front entry, and from thence through the cellar assigned to the widow, to the cellar of the other heirs. It seems to us, therefore, that the plaintiff is entitled to recover upon the third count.

The fourth count was for obstructing the plaintiff in cleaning out the well, which the parties had a right to use in common. It appeared that the water had become offensive to the taste and smell. The plaintiff caused it to be pumped out, and employed a man to go down into the well to examine it, when the defendant prevented him. And the defendant contends that it was altogether unnecessary for the plaintiff to send anybody into the well for that purpose, because he, the de-

fendant, subsequently ascertained the fact that there were no impurities in the well, by employing a man to go down and examine it.    Now that was precisely what the plaintiff wanted to do, and had a right to do, but was prevented from doing. He had a right to examine the well himself, in person, or by his servant.    The direction of the Court of Common Pleas upon this part of the case was entirely correct.

The opinion of the whole Court is, that the exceptions to the rulings of the Court of Common Pleas shall be overruled, and judgment rendered upon the verdict for the plaintiff.